1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| MARLENA ROSS, on behalf of herself and others similarly situated, | No. |
| Plaintiffs, | NOTICE OF REMOVAL |
| vs. | |
| PACIFIC MARITIME ASSOCIATION ("PMA"); JOINT PORT LABOR RELATIONS COMMITTEE ("JPLRC"); SSA MARINE, INC.; ELI BOHM; and DAMIEN BRESSLER, | |
| Defendants. | |

**TO:**  **Clerk of the Court**

**AND TO:**  **Marlena Ross and her attorneys of record and all other defendants and their attorneys of record**

Defendant Pacific Maritime Association ("PMA") removes this action under 28 USC §§ 1331, 1441 and 1446. Removal is warranted for these reasons:

1. Plaintiff Marlena Ross filed her complaint in King County Superior Court—*Ross v. Pacific Maritime Association, et al.*, Case No. 18-2-20277-9 SEA—on August 18, 2018. A true and correct copy of her complaint is attached as **Exhibit A**.

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
T: 206.624.8300 | F: 206.340.9599
PIER 70
2801 ALASKAN WAY, SUITE 300
SEATTLE, WASHINGTON 98121

2.      Plaintiffs served PMA with a copy of the summons and complaint on August 16, 2018.  Removal is therefore timely under 28 U.S.C. § 1446(b).  A true and correct copy of her Affidavit of Service is attached as **Exhibit B**.

3.      PMA is a not-for-profit employers association whose member companies are shipping, terminal operating and stevedoring companies that operate along the West Coast. PMA is a collective bargaining representative that negotiates and administers maritime labor agreements with the unions representing longshore workers in collective bargaining and contract administration.  Attached as **Exhibit C** is a copy of one of the collective bargaining agreements, the Pacific Coast Longshore Contract Document ("PCLCD").

4.      Plaintiff is a resident of King County, Washington and so venue is proper in this district.  Seattle is the appropriate intra-district assignment for the same reason.

5.      All defendants have consented to removal through counsel.

6.      This Court has original subject matter jurisdiction under 28 U.S.C. § 1331.

7.      Although plaintiff tries to limit her complaint to claims arising under Washington state law, federal law completely preempts at least one such claim (as described below), and so the complaint invokes this court's federal question jurisdiction.  *E.g., Caterpillar, Inc. v. Williams*, 482 U.S. 386 (1987) ("Once an area of state law has been completely pre-empted, any claim purportedly based on that pre-empted state law is considered, from its inception, a federal claim, and therefore arises under federal law"); *Audette v. Pacific Maritime Assoc.,* 195 F.3d 1107, 1111 (9th Cir. 1999) ("[A] state common law claim will be converted into one stating a federal claim where the preemptive force of a federal statute is so extraordinary that it displaces any state law claim in the area").

8.      As this court has held, "The complete preemption exception applies often in LMRA cases." *Guardado v. Cascadian Building Management, Ltd.*, -- F. Supp. 2d --, 2016 WL 3105041, at *2 (W.D. 2016) (denying plaintiff motion to remand), *citing, Price v. PSA, Inc.*, 829 F.2d 871, 875 (9th Cir. 1987) (explaining that the complete preemption exception to the well-

NOTICE OF REMOVAL - 2
No.

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
T: 206.624.8300 | F: 206.340.9599
PIER 70
2801 ALASKAN WAY, SUITE 300
SEATTLE, WASHINGTON  98121

4838-8514-0082.2

1    pleaded complaint rule applies mainly to claims preempted by the LMRA). Section 301 of the

2    LMRA provides federal jurisdiction "for violation of contracts between an employer and a labor

3    organization." 29 U.S.C. § 185(a). "Therefore, claims for breach of a CBA are exclusively

4    federal claims under the LMRA." *Guardado v. Cascadian Building Management, Ltd.*, *above*.

5           9.      Section 301 of the LMRA is a jurisdictional statute that has been interpreted as "a

6    congressional mandate to the federal courts to fashion a body of federal common law to be used

7    to address disputes arising out of labor contracts." *Kobold v. Good Samaritan Reg'l Med. Ctr.*,

8    832 F.3d 1024, 1032 (9th Cir. 2016) (*quoting Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 209,

9    105 S. Ct. 1904, 85 L.Ed.2d 206 (1985)). Congress intended for § 301 to "protect the primacy of

10   grievance and arbitration as the forum for resolving CBA disputes and the substantive supremacy

11   of federal law within that forum." *Alaska Airlines Inc. v. Schurke*, 898 F.3d 904, 920 (9th Cir.

12   2018) (*en banc*) (emphasis omitted). As a result, § 301 preempts state law claims "founded

13   directly on rights created by collective-bargaining agreements, and also claims 'substantially

14   dependent on analysis of a collective-bargaining agreement.'" *Caterpillar, Inc. v. Williams*, 482

15   U.S. 386, 394, 107 S. Ct. 2425, 96 L. Ed. 2d 318 (1987) (*quoting Int'l Bhd. of Elec. Workers v.

16   Hechler*, 481 U.S. 851, 859 n.3, 107 S. Ct. 2161, 95 L. Ed. 2d 791 (1987)). But claims are not

17   preempted where the rights at issue are "conferred by state law, independent of the CBAs" and

18   "the matter at hand can be resolved without interpreting the CBAs." *Burnside*, 491 F.3d at 1058.

19         10.     The Ninth Circuit has adopted a two-step inquiry to determine whether state law

20   claims are preempted by § 301. First, the Court asks if the claim involves "rights conferred upon

21   an employee by virtue of state law, not by a CBA." *Id*. at 1059. If the rights at issue "exist[ ]

22   solely as a result of the CBA, then the claim is preempted, and our analysis ends there." *Id*.

23   Second, if the right exists independently of the CBA, the court must determine "whether

24   litigating the state law claim nonetheless requires interpretation of a CBA, such that resolving the

25   entire claim in court threatens the proper role of grievance and arbitration." *Schurke*, 898 F.3d at

26   921. A claim that requires interpretation of a collective bargaining agreement is preempted. *Id*.;

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
T: 206.624.8300 | F: 206.340.9599
PIER 70
2801 ALASKAN WAY, SUITE 300
SEATTLE, WASHINGTON  98121

1    *Burnside*, 491 F.3d at 1059–60.  At this second step, "claims are only preempted to the extent

2    that there is an active dispute over the meaning of contract terms."  *Schurke*, 898 F.3d at 921.

3    (*quotations omitted*); *Kobold v. Good Samaritan Regional Medical Center,* 832 F.3d at 1032-33.

4    　　　11.    "The plaintiff's claim is the touchstone" of the § 301 preemption analysis; "the

5    need to interpret the CBA must inhere in the nature of the plaintiff's claim."  *Cramer v. Consol*

6    *Freightways, Inc.*, 255 F.3d 683, 691 (9th Cir. 2001); *Guardado v. Cascadian Building*

7    *Management, Ltd,* 2016 WL 3105041, at *2.  A defense thus based on a CBA does not support

8    removal preemption. *Caterpillar*, 482 U.S. at 398–99, 107 S. Ct. 2425.  Instead, "adjudication of

9    the claim must require interpretation of a provision of the CBA."  *Cramer*, 255 F.3d at 691–92.

10    　　　12.    Review of the Complaint discloses that several of its discrimination claims

11    asserted under the Washington Law Against Discrimination (WLAD), RCW 48.60. *et seq.,* and

12    the Washington Family Leave Act, RCW 49.78 *et seq.,* invoke rights allegedly provided by the

13    longshore CBA called the "Pacific Coast Longshore and Clerks Agreement" (PCL&CA) and

14    require interpretation of its terms, whose meaning is disputes.  The Complaint's allegations make

15    this clear:

　　　　2.1 Longshore workers include workers who are classified for seniority
16    purposes by PMA and the longshore unions as "unidentified casuals," "identified
      casuals," "B registered" and "A registered" workers. "A registered workers" are
17    the most senior.

18    　　　　2.2 The International Longshore and Warehouse Union ("ILWU") is the
      exclusive bargaining representative of the workers employed by PMA.\
19

20    　　　　2.3 Each port has a local ILWU. In Seattle, the ILWU is Local 19.

21    　　　　2.4 In order to obtain work as a longshore worker in the state of
      Washington for PMA and its members, workers must report to a dispatch hall and
      be dispatched on a daily basis to a job. The dispatch hall procedures are jointly
22    operated and controlled by PMA and the local longshore unions.

23    　　　　2.5 The dispatching of workers to a job is done on the basis of seniority
      starting with "A" registered workers and continuing through "unidentified casual"
24    workers, where work is available. Workers may not obtain longshore work for
      PMA and its members directly from PMA and its members, but must be
25    dispatched through the dispatch hall. All longshore workers are authorized by
      PMA and its members to be present at the dispatch hall and must be present to
26    obtain work.

NOTICE OF REMOVAL - 4
No.

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
T: 206.624.8300 | F: 206.340.9599
PIER 70
2801 ALASKAN WAY, SUITE 300
SEATTLE, WASHINGTON  98121

4838-8514-0082.2

2.6 During all relevant periods, PMA and its members have obtained longshore workers on a daily basis from dispatch halls located in various ports in the State of Washington, including Seattle, Tacoma, Vancouver, Longview and other ports.

2.7 Plaintiff Ross has obtained work for PMA and its members through the dispatch hall located in Seattle.

\*       \*       \*

2.14 PMA follows a "40% availability rule" for all causals. This means an identified casual worker must show up at the dispatch hall to request a work shift at least 40% of the time, or the worker will be removed as a longshore worker.

2.15 PMA follows a "60% availability rule" with B class workers. A class workers do not have an availability rule.

2.16 Longshore workers are supposed to advance in seniority from unidentified casual, to identified casual, to "B registered" to "A registered" based on the number of hours worked.

2.17 Decisions about advancement in seniority are made by the local Joint Port Labor Relations Committee ("JPLRC") at each port, which is comprised of representatives of PMA and the ILWU.

2.18 During Ms. Ross's tenure as a longshore worker, PMA, through its representatives in the JPLRC, repeatedly changed the metric for counting "hours worked" for advancement discriminatorily.

2.19 PMA's, its members who employ longshore workers in Seattle and JPLRC's shifting metric has had the intent and effect of advancing men through the ranks to become B registered and A registered workers, and denying women who became pregnant and took leave to have children the ability to advance in the ranks.

2.20 Various classes of longshore workers receive credit towards "hours worked" while they are on leave from work or unable to work as a longshore worker. Classes of workers who receive credit towards hours worked include: those who have "industrial illness or injury arising out of employment," military service members; workers serving as full-time union officials; workers serving as jurors.

2.21 PMA, its members who employ longshore workers in Seattle and JPLRC discriminate against female, pregnant longshore workers by not providing them with credit towards "hours worked" while they are on leave from work with pregnancy-related restrictions or while recovering from childbirth. The lack of credited hours means that female longshore workers who have children and take maternity leave do not advance as quickly in seniority as other, predominantly male workers.

NOTICE OF REMOVAL - 5
No.

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
T: 206.624.8300 | F: 206.340.9599
PIER 70
2801 ALASKAN WAY, SUITE 300
SEATTLE, WASHINGTON 98121

4838-8514-0082.2

1

2.22 Various classes of longshore work ers are also given "light duty" assignments while needed. Classes of workers include those recovering from industrial injury arising out of employment. These workers continue to receive job assignments, pay, and to accumulate "hours worked" towards advancement while working in "light duty" roles.

2

3

4

2.23 PMA, its member s who employ longshore workers in Seattle and JPLRC discriminate against pregnant longshore workers by not providing them with light duty assignments. As a result, many pregnant longshore workers are forced to take leave from work altogether while pregnant because they cannot engage in some of the more taxing duties of certain longshore jobs, such as heavy lifting.

5

6

7

*        *        *

8

9

2.26 She began work as an unidentified casual, the lowest seniority. Later in 2007 Ross became an "identified casual" longshore worker.

10

*        *        *

11

2.32 PMA did not offer Ross light duty assignments so Ross had to stop working altogether during her pregnancy.

12

13

*        *        *

14

2.35 PMA and the JPLRC did not provide Ross credit towards "hours worked" for the hours that she missed work due to her pregnancy-related restrictions or her recovery from childbirth.

15

2.36 During her pregnancy and recovery from childbirth, Ross dropped 113 spots on the list for advancing in seniority.

16

17

*        *        *

18

2.40 Because PMA denied Ross light duty during her pregnancy and she was forced to take off work completely, Ross did not have sufficient qualifying hours and was not advanced to a B registered worker.

19

20

*        *        *

21

2.43 In May 2013, Ross became pregnant with her second child.

22

2.44 PMA did not offer Ross light duty assignments so Ross had to stop working altogether during her pregnancy.

23

2.45 Ross's son was born in January 2014. She returned to work in April 2014.

24

2.46 PMA and JPLRC did not provide Ross credit towards "hours worked" for the hours that she missed work due to her pregnancy-related restrictions or her recovery from childbirth.

25

26

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
T: 206.624.8300 | F: 206.340.9599
PIER 70
2801 ALASKAN WAY, SUITE 300
SEATTLE, WASHINGTON  98121

1
2

2.47 During her pregnancy and recovery from childbirth, Ross dropped 55 spots on the list for advancing in seniority.

3

\*      \*      \*

4

2.50 On June 23rd, 2015 the JPLRC decided to advance an additional 2 identified casuals to B registered workers.

5
6

2.51 This time, instead of calculating relevant hours beginning from the last quarter after they had advanced people previously, the JPLRC calculated based on "total industry hours."

7
8

2.52 This arbitrary and discriminatory change in metrics again harmed Ross because the time off during her pregnancies and her maternity leaves counted against her.

9

\*      \*      \*

10
11

2.58 PMA and JPLRC did not provide Ross credit towards "hours worked" for the hours that she missed work due to her pregnancy-related restrictions or her recovery from childbirth.

12

\*      \*      \*

13
14
15

2.78 If Ross had never become pregnant, or had she been given credit for hours missed due to pregnancy and child birth related leave, she would have advanced to become a B Registered worker in approximately 2010, and an A Registered worker in 2015.

16
17

2.79 As a result of not being given credit towards "hour worked," Ross is still an identified casual. As an identified casual, Ross is not a union member, receives lower wages, has no paid vacation days, and ranks behind A and B registered workers for work assignments.

18

2.80 Between 2012-2016, the JPLRC moved up 2 casuals to B registered.

19
20

2.81 In late 2017 through the second quarter of 2018, the JPLRC announced that it would be moving 82 people up in seniority.

21
22

2.82 Instead of basing the promotions on hours worked beginning from the last quarter since they last advanced people, the JPLRC decided to base this round of promotions on total industry hours.

23

2.83 Ross was not advanced.

24

2.84 If Ross had been given credit towards "hour worked" for each of her pregnancies, Ross would be one of the 82 people being promoted.

25

\*      \*      \*

26

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
T: 206.624.8300 | F: 206.340.9599
PIER 70
2801 ALASKAN WAY, SUITE 300
SEATTLE, WASHINGTON 98121

4838-8514-0082.2

3.3 Commonality. Common questions of law and fact exist as to the claims of all class members, including:

a. Whether PMA discriminated against female workers including workers who became pregnant through a policy or practice of denying light duty work associated with pregnancy related restrictions.

b. Whether PMA and JPLRC discriminated [*sic*. against] female workers including workers who became pregnant through a policy or practice of denying female workers credit towards hours missed while they were forced to take leave during pregnancy because of lack of light duty, thus hindering their advancement.

c. Whether PMA and JPLCRC discriminated [*sic*. against] female workers including workers who became pregnant through a policy or practice of denying female workers who have taken maternity leave credit towards hours missed while on maternity leave, thus hindering their advancement.

d. Whether the above described policies and practices have discriminated against female workers by denying them the same opportunities and benefits afforded male workers in the longshore industry in Washington based on their gender.

3.4 Typicality. The claims of Plaintiff Ross are typical of the claims of the class because they were subject to the same requirements, procedures, policies and practices of PMA and its members as the other members of the class.

\*      \*      \*

4.1 Through the above described and complained of policies and practices towards female longshore workers who become pregnant, Defendants PMA, JPLRC and SSA Marine ("Defendants") have engaged in a pattern and practice of disparate treatment and disparate impact sex discrimination and acts that created a hostile work environment for all female workers on the basis of their gender by denying female workers the same benefits and opportunities of employment afforded male longshore workers, including plaintiff Ross.

4.2 Defendants have engaged in disparate treatment and disparate impact discrimination on female longshore workers through their policies and practices related to job assignments, light duty, lack of credit for hours on pregnancy and childbirth related leave, and advancement in seniority. In all of above respects, Defendants treat pregnant longshore workers and longshore workers who give birth less favorably than men and other classes of workers.

(*See* Complaint, attached as **Exhibit A** hereto.)

13.     Paragraph 4.1 summarizes the state discrimination claims: "Through the above described and complained of policies and practices towards female longshore workers who become pregnant, Defendants PMA, JPLRC and SSA Marine ("Defendants") have engaged in a

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
T: 206.624.8300 | F: 206.340.9599
PIER 70
2801 ALASKAN WAY, SUITE 300
SEATTLE, WASHINGTON 98121

4838-8514-0082.2

pattern and practice of disparate treatment and disparate impact sex discrimination and acts that created a hostile work environment for all female workers on the basis of their gender by denying female workers the same benefits and opportunities of employment afforded male longshore workers, including plaintiff Ross."

14.    All the alleged "policies and practices" described and challenged in the Complaint as well as all the "same benefits and opportunities of employment afforded male longshore workers" allegedly denied to Plaintiff and female workers derive solely from the provisions and practices under the PCL&CA, the longshore industry's collective bargaining agreement.  The very notion of longshore "seniority" status, the criteria for seniority eligibility, the rules and circumstances for seniority advancement, whether and how longshore "hours credit" get awarded and calculated, and the rules for "light duty work assignments" all arise from the written provisions and established practices of the PCL&CA.

15.    Without doubt, the "policies and practices" asserted in the Complaint are, in fact, the written provisions and established practices of the PCL&CA.  There is no other source in the unionized longshore industry.  It is an established principle of collective bargaining law that "policies and practices" under a CBA are "an implied term of the CBA based on 'the parties' 'practice, usage and custom.'" *Consol. Rail Corp. v. Ry. Labor Execs.' Ass'n (Conrail)*, 491 U.S. 299, 311, 109 S. Ct. 2477, 105 L.Ed.2d 250 (1989) (quoting *Transp. Union v. Union Pac. R.R. Co.*, 385 U.S. 157, 161, 87 S. Ct. 369, 17 L.Ed.2d 264 (1966)); see also, *Schurke* 898 F.3d at 918 ("a CBA is not strictly limited to its terms, but gives rise to a broader common law of its own— 'the common law of a particular industry or of a particular plant,'" quoting, *United Steelworkers v. Warrior & Gulf Navigation Co.* (*Steelworkers II*), 363 U.S. 574, 579, 80 S. Ct. 1347, 4 L.Ed.2d 1409 (1960)).

16.    Nor do the two state laws asserted in the Complaint – WLAD and WFLA – require that longshore workers receive the type of benefits described in the Complaint.  That is why the Complaint alleges that female and pregnant longshore workers are legally entitled to the

NOTICE OF REMOVAL - 9
No.

4838-8514-0082.2

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
T: 206.624.8300 | F: 206.340.9599
PIER 70
2801 ALASKAN WAY, SUITE 300
SEATTLE, WASHINGTON  98121

1   various benefits based *solely on the claim* that male workers enjoy such benefits under the

2   longshore industry "policies and practices."

3       17.       Thus, the Complaint, on its face, necessarily asserts violations of the PCL&CA

4   itself in the form of female workers allegedly being deprived of PCL&CA rights and benefits

5   enjoyed by male workers.  Since the asserted "rights" of seniority status, seniority advancement,

6   longshore "hours credits" during leave from work and "light duty assignments" "exist solely as a

7   result of the CBA, then the claim is preempted, and [legal] analysis ends there" at the first step of

8   the preemption test.  *Schurke, 898 F.3d at 921. (quotations omitted); Kobold v. Good Samaritan*

9   *Regional Medical Center, 832 F.3d at 1032-33; Burnside, 491 F.3d at 1058.*

10      18.       Alternatively, the various discrimination claims in the Complaint are completely

11  preempted under the second step of the Ninth Circuit test because "there is an active dispute over

12  the meaning of contract terms."  *Schurke*, 898 F.3d at 921 (*quotations omitted*); *Kobold v. Good*

13  *Samaritan Regional Medical Center,* 832 F.3d at 1032-33.   Defendants submit that the

14  Complaint contains an inaccurate and false description of the "policies and practices" under the

15  PCL&CA for determining eligibility and individual standing for longshore seniority

16  advancement, "hours credit" during leave from work, and longshore "light duty assignments."  In

17  particular, Defendants assert that no longshore worker, whether male or female, are entitled to or

18  receive the type of "hours credit" during leave or the type of "light duty assignments" which the

19  Complaint asserts are enjoyed by male workers and denied to female workers.

20      19.       For example, under the PCL&CA, only longshore workers (both male and

21  female) who qualify for military service leave and benefits under the Uniformed Services

22  Employment and Reemployment Rights Act (USERRA), 38 U.S.C. §§ 4301–4335, qualify for

23  and receive "hours credit" and then, only for military leave in limited situations as specified in

24  the longshore industry USERRA Policy, which is part of the PCL&CA.  No other PCL&CA

25  provision or practice provides for or has granted to any longshore worker (whether male or

26  female) longshore "hours credits" for any other types of leave from work, contrary to the

NOTICE OF REMOVAL - 10
No.

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
T: 206.624.8300 | F: 206.340.9599
PIER 70
2801 ALASKAN WAY, SUITE 300
SEATTLE, WASHINGTON  98121

4838-8514-0082.2

1    allegations in the Complaint. Similarly, longshore "light duty assignments" are tightly regulated

2    by the various seniority and job dispatch rules administered under the PCL&CA as well as by the

3    detailed provisions of the longshore industry's Policy on ADA Compliance and Reasonable

4    Accommodation, which is also part of the PCL&CA. Because the Complaint alleges that female

5    or pregnant workers do not qualify for or receive longshore "light duty assignments" as

6    compared to men, this is refuted by the PCL&CA's "policies and practices," which are

7    inaccurately described and construed in the Complaint. As a result, "there is an active dispute

8    over the meaning of contract terms" and contract "policies and practices" on which the

9    Complaint's discrimination claims are based, subjecting them to complete preemption. See, *e.g.,*

10   *Kobold v. Good Samaritan Regional Medical Center,* 832 F.3d 1035-36 (even if Oregon law

11   independently conferred upon plaintiff the asserted right to receive premium pay for extra shifts

12   worked, court must interpret the CBA's disputed provisions to "determine which of the shifts she

13   worked qualified for premium pay" under the CBA to calculate amounts owed); *Firestone v.*

14   *Southern California Gas Co.*, 219 F.3d 1063, 1066 (9th Cir. 2000) (state claim preempted where

15   it required interpretation of the CBA and the parties "disagree[d] on the meaning of terms" in the

16   CBA on how to calculate the applicable regular wage rate); *Audette v. Int'l Longshoremen's &*

17   *Warehousemen's Union*, 195 F.3d at 1112 (court must interpret disputed terms of the PCL&CA

18   to determine longshore workers' claims for seniority advancement); *see also Hernandez v.*

19   *Pacific Maritime Association*, 379 Fed. Appx. 668, 670, 2010 WL 2000720, *1–3 (9th Cir. 2010)

20   ("Since the plaintiff disputes the validity or relevance of his removal from the [longshore]

21   dispatch list, a court would be required to determine the meaning of the relevant rules and the

22   effect of the JPLRC's action removing the plaintiff from the dispatch list," as defined under the

23   PCL&CA.); *compare Schurke*, 898 F.3d 904, 927 ("In this case, the meaning of every relevant

24   provision in the CBA is agreed upon").

25        20.      The courts have found LMRA "complete preemption" of state discrimination

26   claims involving similar types of allegations as those here. For example, in *Silva v. USP*

NOTICE OF REMOVAL - 11
No.

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
T: 206.624.8300 | F: 206.340.9599
PIER 70
2801 ALASKAN WAY, SUITE 300
SEATTLE, WASHINGTON 98121

4838-8514-0082.2

1    *Reddaway Inc.*, No. 17-CV-01354-LB, 2017 WL 2117397 (N.D. Cal. May 15, 2017), the

2    plaintiff worked as a pickup and delivery truck driver, and after he experienced shoulder pain, he

3    requested a job transfer to long-distance driving as a reasonable accommodation.  The company

4    denied the request, and the plaintiff sued, alleging breach of the CBA, common law

5    discrimination, and disability discrimination under California's anti-discrimination law.  *Id.* at

6    *1.  The plaintiff conceded that the CBA breach claim was preempted but argued his state

7    discrimination claim was not.  *Id.*  The court found that Silva's discrimination claims were

8    preempted because "Mr. Silva's claims will likely 'necessitate determining whether CBA

9    imposed an obligation on' Reddaway to offer him a line-driving position or whether, as the

10    defendant claims, its obligations under the CBA prevented it from doing so—which could

11    disprove Mr. Silva's claim that Reddaway wrongfully discriminated against him."  *Id.* at *4

12    (footnote omitted).  The court found, "[i]t is more than just a question of having to 'refer' to or

13    fleetingly 'consult' the CBA.  Whether Reddaway discriminated against Mr. Silva by not

14    assigning him to line driving will need some substantive assessment of the CBA to determine

15    whether the terms of that compact—terms on job assignment and seniority at least—allowed the

16    defendant to do anything else."  *Id.*  The *Silva* court distinguished the plaintiff's claims from

17    "freestanding" discrimination claims cases that do not implicate the terms of the CBA.  *Id.*  The

18    court held that the plaintiff's discrimination claims were preempted because "[plaintiff's] theory

19    [was] that [the defendant] discriminatorily breached the CBA itself," *Id.* at *5, which is the gist

20    of the Complaint here.

21        21.    In *Bachilla v. Pac. Bell Tel. Co.*, 2007 WL 2765689 (E.D. Cal. 2007), the plaintiff

22    alleged that the defendant discriminated against her because of her sex when, in violation of

23    company policy, the defendant promoted less-senior male employees.  Whether plaintiff and the

24    comparable males were eligible for a promotion was governed by the terms of the collective

25    bargaining agreement.  *Id.* at *7-8.  The court concluded that "preemption [was] appropriate

26    under the circumstances because the question before the court is the interpretation to be given to

NOTICE OF REMOVAL - 12
No.

4838-8514-0082.2

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
T: 206.624.8300 | F: 206.340.9599
PIER 70
2801 ALASKAN WAY, SUITE 300
SEATTLE, WASHINGTON  98121

1    the seniority and transfer provisions" of the collective bargaining agreement and because "the

2    factual inquiry as to whether [the defendant] had a non-discriminatory reason for failing to

3    promote" the plaintiff turned on the meaning of those provisions. *Id.*

4    22.    In *Madison v. Motion Picture Set Painters and Sign Writers Local 729*, 132

5    F. Supp. 2d 1244 (C.D. Cal. 2000), the plaintiff sued his union claiming that it had discriminated

6    against him in the manner in which it had handled a grievance procedure set forth under the

7    terms of a CBA.  The court found the state discrimination claims preempted because whether the

8    plaintiff had been discriminated against turned on (1) what the CBA's grievance procedures were

9    and (2) whether those procedures had been applied to plaintiff in a manner that differed from any

10   other employees, both issues disputed by the parties.

11   23.    Likewise, because the Complaint here alleges discriminatory application of

12   seniority rights, hours credits for leave and "light duty assignments" under "policies and

13   practices" of the PCL&CA, which terms and practices are disputed by the parties, the state

14   discrimination claims are completely preempted and subject to federal removal jurisdiction

15   pursuant to Section 301 of the LMRA.

16   **THEREFORE, PMA GIVES NOTICE** that this matter, previously pending in the

17   Superior Court of Washington for King County under Cause No. 18-2-20277-9 SEA, is

18   **REMOVED** to this Court.

19

20

21

22

23

24

25

26

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
T: 206.624.8300 | F: 206.340.9599
PIER 70
2801 ALASKAN WAY, SUITE 300
SEATTLE, WASHINGTON  98121

1    DATED this 14th day of September 2018.

2                                    *s/ Clemens H. Barnes*
                                     *s/ Kellen Andrew Hade*
3                                    *s/ Katie Loberstein*
                                     Clemens H. Barnes, WSBA No. 4905
4                                    Kellen Andrew Hade, WSBA No. 44535
                                     Katie Loberstein, WSBA No. 51091
5                                    MILLER NASH GRAHAM & DUNN LLP
                                     Pier 70, 2801 Alaskan Way Ste 300
6                                    Seattle, WA  98121-1128
                                     Tel:  (206) 624-8300
7                                    Fax:  (206) 340-9599
                                     Email:  clem.barnes@millernash.com
8                                    Email:  kellen.hade@millernash.com
                                     Email:  katie.loberstein@millernash.com
9                                    *Attorneys for Pacific Maritime Association*

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

NOTICE OF REMOVAL - 14
No.

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
T: 206.624.8300 | F: 206.340.9599
PIER 70
2801 ALASKAN WAY, SUITE 300
SEATTLE, WASHINGTON  98121

4838-8514-0082.2

1

**CERTIFICATE OF SERVICE**

2

The undersigned declares:  on the 14th day of September, 2018, a copy of the foregoing

3

document was served on counsel for the parties, via office email and U.S. Mail, at the addresses

4

set forth below.

5

6

I declare under penalty of perjury under the laws of the state of Washington that the

foregoing is true and correct.

7

Signed at Seattle, Washington this 14th day of September, 2018.

8

9

*By: Kellen Andrew Hade*

Clemens H. Barnes, WSBA No. 4905

10

Kellen Andrew Hade, WSBA No. 44535

Katie Loberstein, WSBA No. 51091

MILLER NASH GRAHAM & DUNN LLP

11

Pier 70, 2801 Alaskan Way Ste 300

Seattle, WA  98121-1128

12

Tel:  (206) 624-8300

Fax:  (206) 340-9599

13

Email:  clem.barnes@millernash.com

Email:  kellen.hade@millernash.com

14

Email:  katie.loberstein@millernash.com

*Attorneys for Defendant Pacific Maritime*

15

*Association*

16

17

18

19

20

21

22

23

24

25

26

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
T: 206.624.8300 | F: 206.340.9599
PIER 70
2801 ALASKAN WAY, SUITE 300
SEATTLE, WASHINGTON  98121