## UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF WASHINGTON

MARLENA ROSS, on behalf of herself and
others similarly situated,

              Plaintiffs,

      v.

PACIFIC MARITIME ASSOCIATION
("PMA"); JOINT PORT LABOR
RELATIONS COMMITTEE ("JPLRC");
SSA MARINE, INC.; ELI BOHM; and
DAMIEN BRESSLER,

              Defendants.

Civil Action No. 2:18-cv-01367-BJR

ORDER GRANTING PLAINTIFFS'
MOTION TO REMAND

## I.    INTRODUCTION

Plaintiff Marlena Ross, a longshore worker, filed a lawsuit in King County, Washington,
alleging that Defendants violated Washington state laws against pregnancy discrimination, sex
discrimination, and hostile work environment. Defendants removed the case to federal district
court by asserting that at least one of Ross's claims arises under, or requires an interpretation of,
a collective bargaining agreement (CBA), and that such claims trigger this Court's federal
question jurisdiction and preempt state law claims. Ross opposes the removal and Defendants'
justification for it, so now moves this Court to remand the case back to state court. Having
reviewed the parties' submissions, the record of the case, and the relevant legal authority, the

1

Court grants Ross's motion and remands the case. The reasoning for the Court's decision follows.

## II.     BACKGROUND

### *A.* **Factual Background**

Plaintiff Marlena Ross has been employed as a longshore worker in Washington since 2006. Compl., ECF No. 1-2 at ¶ 1.1.

There are five defendants. Defendant Pacific Maritime Association ("PMA") is an association of shipping and warehouse companies incorporated in California that operates in Washington, including the ports of Tacoma and Seattle. *Id.* at ¶ 1.2. Defendant Joint Port Labor Relations Committee ("JPLRC") is an unincorporated Washington Labor Association. *Id.* at ¶ 1.3. Defendant SSA Marine, Inc. ("SSA Marine") operates shipping terminals in Washington and employs longshore workers, including Ms. Ross. *Id.* at ¶ 1.4. SSA Marine is a member of PMA and had one or more representatives on the JPLRC. *Id.* Defendants Eli Bohm and Damien Bressler were managers for SSA Marine. *Id.* at ¶¶ 1.5, 1.6.

A CBA known as the Pacific Coast Longshore and Clerks Agreement ("PCL&CA") exists between Washington longshore workers and the Defendants who employ them. Defendants attached a current version of the PCL&CA to their notice of removal. ECF No. 1-4.

In her complaint, Ross alleges that Defendants engaged in sex discrimination and pregnancy discrimination, and created a hostile work environment, all in violation of Washington law. ECF No. 1 at ¶ 1. Longshore workers advance in seniority based on hours worked. Ross asserts that Defendants discriminatorily changed how "hours worked" were counted. *Id.* at ¶¶ 2.18 to 2.21. Similarly, assignment criteria for "light duty" unfairly excluded women who became pregnant, which forced women to take leave from work to avoid having to perform

heavy labor. *Id.* at ¶¶ 2.22 and 2.23. These and other practices, Ross claims, resulted in lost wages and emotional distress. *Id.* at ¶ 6.1.

Ross further alleges that after she became pregnant in 2009, she miscarried because she felt she had to continue performing the longshore jobs involving heavy work so that she could continue being assigned any work. *Id.* at ¶¶ 2.28 to 2.30. When she became pregnant again in the summer of 2010, her doctor restricted her from performing work involving heavy lifting. *Id.* at ¶ 2.31. Since PMA did not offer her light duty assignments she stopped working altogether during her second pregnancy. *Id.* at ¶ 2.32. Ross's daughter was born in April 2011 and she returned to work four months later. *Id.* at ¶ 2.34. She did not receive credit towards "hours worked" during her pregnancy-related absence, and as a result dropped in the order of merit for advancement. *Id.* at ¶¶ 2.35 and 2.36. Once back at work, Ross alleges that she had no access to a lactation room at work to express milk. *Id.* at ¶ 2.37.

Ross alleges that this scenario replayed itself following the pregnancies and births of her second and third children in 2014 and 2016. *Id.* at ¶¶ 2.42 to 2.54. Ross did not receive credit for pregnancy-related hours not worked, was often not assigned light duty, and therefore lost opportunities to advance in seniority. *Id.* She also was not provided adequate facilities and accommodation to express milk at work. *Id.* at ¶¶ 2.44 to 2.75. These work conditions allegedly resulted in health problems, stymied career advancement compared to her male co-workers, retaliation, and a hostile work environment. *Id.* at ¶¶ 2.70, 2.71, 2.76, 2.77, 2.78 to 2.84.

Ross brings her complaint not just for herself but also on behalf of a potential class of at least 100 similar longshore workers employed by Defendants in Washington, "including over 45 workers who became pregnant and/or took leave from work to recover from birth and care for an infant between August 1, 2008 and August 6, 2018." *Id.* at ¶ 3.2. Ross asserts that this class

3

shares common questions of fact and law, including causes of action for violations of the Washington Law Against Discrimination, RCW 49.60, *et seq.*; the Washington Family Leave Act, RCW 49.78, *et seq.* and the Healthy Starts Act, RCW 43.10, *et seq.*

### B. **Procedural Background**

Ross filed her complaint in King County Superior Court on August 10, 2018. ECF No. 1-2. Defendant PMA filed a notice of removal to federal court for the Western District of Washington on September 14, 2018 (ECF No. 1). PMA noted that all Defendants through counsel consented to removal. *Id.* at ¶ 5. Defendants argue that federal law preempts at least one of Ross's claims, thus invoking this Court's federal question jurisdiction.

Ross filed a motion to remand on October 11, 2018 (ECF No. 7), arguing that removal to federal court was improper because she had only pleaded state law claims and had avoided making any claims that would have invoked federal jurisdiction. The motion to remand is now ripe for the Court's decision.

## III.   DISCUSSION

### A. **Standard of Review on Motion to Remand**

Removal requirements should be strictly construed. *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992). A removing party bears the burden of establishing federal jurisdiction and must overcome a "strong presumption" against removal. *Abrego Abrego v. The Dow Chem. Co.*, 443 F.3d 676, 685 (9th Cir. 2006); *Gaus*, 980 F.2d at 566. Federal jurisdiction "must be rejected if there is any doubt as to the right of removal in the first instance." *Gaus*, 980 F.2d at 566. If at any time before final judgment it appears that the federal district court lacks subject matter jurisdiction, "the case shall be remanded" to state court. 28 U.S.C. § 1447(c); see also *Duncan v. Stuetzle*, 76 F.3d 1480, 1485 (9th Cir. 1996).

4

*B.* **The Scope of Preemption under Labor Management Relations Act § 301**

Federal district courts have original jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. If a civil action filed in state court includes a claim allegedly "arising under" federal law, a Defendant may remove the case to federal district court. 28 U.S.C. § 1441(b).

Claims under the Labor Management Relations Act (LMRA) "arise under" federal law. Because of an interest in national uniformity in federal labor laws, LMRA § 301 provides that "[s]uits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce . . . may be brought in any district court of the United States having jurisdiction of the parties. 29 U.S.C. § 185(a). Cases interpreting the LMRA have emphasized the need for uniformity: LMRA § 301 ought to be understood "as a congressional mandate to the federal courts to fashion a body of federal common law to be used to address disputes arising out of labor contracts." *Kobold v. Good Samaritan Regional Medical Center*, 832 F.3d 1024, 1032 (9th Cir. 2016), quoting *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 209 (1985).

When federal question jurisdiction is triggered in LMRA § 301 cases, state law claims are preempted. *Kobold*, 832 F.3d at 1032; *Burnside v. Kiewit Pac. Corp.*, 491 F.3d 1053, 1059 (9th Cir. 2007).

*C.* **Whether Ross's State Law Claims are Preempted**

Defendants argue that preemption applies because Ross's complaint includes federal claims disguised as state claims, in that several of her discrimination claims are really rights provided by the CBA or at least require an interpretation of some of the CBA terms. Ross, on the other hand, moves to remand, asserting that resolution of the issues at the heart of her

5

complaint—that Defendants discriminated against her based on her gender and failed to provide reasonable accommodations for her pregnancy-related requests—are grounded in Washington state law and do not depend on provisions of a CBA.

### 1. *Schurke* Test

The resolution of Ross's motion to remand turns on whether her claims are preempted by the LMRA. The Ninth Circuit uses the two-part *Schurke* test, building on the *Burnside* test that preceded *Schurke*, to determine when state law claims are preempted by LMRA § 301. *See Alaska Airlines v. Schurke*, 898 F.3d 904 (9th Cir. 2018); *Matson v. United Parcel Service, Inc.*, 840 F.3d 1126, 1132-33 (9th Cir. 2016); *Kobold*, 832 F.3d at 1032-34; *Burnside*, 491 F.3d at 1059-1060.

The parties agree to the *Schurke* framework but differ on the outcome of its application.

### 2. Whether the Claims "Arise[ ] Entirely from" a Right or Duty of a CBA

In the first prong of the *Schurke* test, courts evaluate the legal character of a claim to determine whether it "arises entirely from" a right or duty in a CBA. *Id.* at 920-21. If the CBA is the "only source" of the right the plaintiff seeks to vindicate, the claim is a CBA dispute and is preempted. *Id.* Stated another way, the first prong of the test considers "whether a particular right inheres in state law or, instead, is grounded in a CBA." *Burnside*, 491 F.3d at 1060. The rationale for this requirement is to prevent end-runs around negotiated-for CBA arbitration promises by relabeling as tort suits "actions simply alleging breaches of duties assumed in collective bargaining agreements." *Livadas v. Bradshaw*, 512 U.S. 107, 123 (1994).

Defendants assert that Ross's claims meet the first *Schurke* test of "aris[ing] entirely from" a right or duty of a CBA by citing extensive excerpts from Ross's complaint that mention CBA provisions for longshore worker advancement and eligibility for light duty assignments.

They argue that these show "how dependent Plaintiff's claims are on the CBA, or the policies and practices under it."

Defendants' argument misses the mark. Without analyzing any specific examples, Defendants assert that the complaint's mention of the CBA and its terms mean that Ross is asserting contractual entitlement to rights or duties under the CBA. But a complaint's mention of CBA-defined rights by itself does not trigger preemption. *Livadas*, 512 U.S. at 125. Instead, preemption is triggered when a state law claim is founded on a right grounded in a CBA. *Matson*, 804 F.3d at 1133.

Claims based on contractual rights under the PCL&CA CBA are simply not at issue here. Instead of asserting contractual rights based on the CBA, Ross's complaint alleges discrimination based on her gender and pregnancy status in violation of Washington state law. Because these claims are derived from state law, preemption is not warranted. "[I]t would be inconsistent with congressional intent under [§ 301] to preempt state rules that proscribe conduct, or establish rights and obligations, independent of a labor contract." *Lueck*, 471 U.S. at 213.

More specifically to Ross's claims, the right not to work in a gender-based hostile work environment is a "nonnegotiable state-law right [ ] . . . independent of any right established by contract." *Matson*, 840 F.3d at 1133, quoting *Lueck*, 471 U.S. at 213. Ross, like the plaintiff in *Matson*, alleged that her work environment was systematically unfavorable and hostile to women in violation of state law, and did not challenge whether she met CBA-defined criteria for work assignments. Defendants do not address these holdings from *Matson* or *Lueck*. That the Ninth Circuit has specifically held gender-based discrimination claims to be firmly grounded in state law and not in contract (CBA or otherwise) undermines Defendants' assertion that Ross's gender-based claims arise under the CBA. Since "Section 301 does not preempt claims to

vindicate such nonnegotiable state law rights," *Davies v. Premier Chemicals, Inc.*, 50 Fed.Appx. 811, 812 (9th Cir. 2002), Defendants' challenge fails.[1]

### 3. Whether the Claims "Substantially Depend" on an Interpretation of a CBA

According to the second prong of the *Schurke* test, even if a claim passes the first prong of not arising entirely from a CBA, state law claims will still be preempted if litigating the claim "substantially depends" on an interpretation of a CBA that would be more properly adjudicated using the CBA's grievance and arbitration provisions. *Schurke* 898 F.3d at 921. The rationale for preempting claims that require interpretation of a CBA is to preserve "a central tenet of federal labor-contract law . . . that it is the arbitrator, not the court, who has the responsibility to interpret the labor contract in the first instance." *Lueck*, 471 U.S. at 220.

Defendants first argue that this interpretation requirement is met by asserting that there is an active dispute about how to interpret the CBA provisions for promotion, hours credit, and qualification for light-duty assignments. Resolving this dispute hinges on the legal standards for what it means to "interpret" a CBA. Claims are not preempted if they involve merely "looking to" versus "interpreting" CBA terms. *Matson*, 840 F.3d at 1132, citing *Burnside*, 491 F.3d at 1060. "Interpretation" is construed narrowly. *Schurke* 898 F.3d at 921. It means more than "'consider,' refer to,' or 'apply.'" *Balcorta v. Twentieth Century-Fox Film Corp.*, 203 F.3d 1102, 1108 (9th Cir. 2000). A "hypothetical connection between the claim and the terms of the CBA" is not enough; rather, adjudication of the claim must *require* interpretation of a provision of the CBA in order to trigger preemption. *Cramer v. Consol. Freightways, Inc.*, 255 F.3d 683, 689 (9th Cir. 2001) (en banc) (emphasis added).

---

[1] Since Ross's claims do not arise from a CBA, they most certainly do not "arise[ ] *entirely from*" a CBA as our higher Court requires to trigger preemption. *Schurke*, 898 F.3d at 920-21 (emphasis added).

Given the exacting standards for what it means to "interpret" CBA terms, the Court finds that there is no dispute about the CBA provisions that requires interpretation. Ross is correct in arguing that her complaint "makes no assertions regarding the meaning of those terms [of the CBA]," such as whether she met the CBA's listed requirements for light duty or criteria for advancing to a higher longshore worker status. The mere mention of CBA provisions in Ross's complaint does not mean the terms are subject to different interpretations, and Defendants' vague references to the parties' "understanding" of CBA terms fail to meet the requirement that "interpretation" is required.

In filings before this Court, no parties point to any terms of the CBA whose interpretation would resolve Ross's discrimination claims. The Court upon its own analysis of the 17-page complaint could not identify any dispute about the meaning of any of the CBA's provisions. Thus, the string of cases cited by Defendants about disputes that actually did hinge on the interpretation of CBA terms only serves to highlight how those cases differ from the present case. For example, in *Silva v. USP Reddaway*, the court found the claims preempted because the crux of the dispute was how to interpret the CBA's terms about job qualification and seniority when the plaintiff asserted that he should qualify for a position as a long-distance driver as a reasonable accommodation for his shoulder pain. 2017 WL 2117397 (N.D. Cal. May 15, 2017). Similarly, in *Bachilla v. Pac. Bell Tel. Co.*, the court found that preemption was warranted because the crux of the dispute was the plaintiff's eligibility for promotion under the seniority and transfer provisions of a CBA. 2007 WL 2765689 (E.D. Cal. 2007). Unlike the present case, interpretation of CBA terms was at the heart of these cases.

Next, Defendants argue that Ross's claims substantially depend on the interpretation of a CBA because a discrimination case such as this will almost certainly involve Defendants'

defensive reliance on the CBA to show that they had non-discriminatory reasons for their conduct. In this way, their argument goes, the outcome of the claim "substantially depends" on how the CBA is interpreted. Defendants cite cases supporting this view, including *Audette v. ILWU*, which held that state law claims are "preempted because resolution of the [state] discrimination and retaliation claims turns on defendant's offer of a legitimate nondiscriminatory reason requiring interpretation of the collective bargaining agreement." 195 F.3d 1107, 1113 (9th Cir. 1999).

This Court finds *Audette* inapposite. First, the scope of what the Ninth Circuit means by "interpretation" has been narrowed since *Audette*. In *Cramer*, decided in 2001 two years after *Audette*, the Ninth Circuit clarified its § 301 preemption principles and reined in its prior cases that took an expansive view of what counted as "interpreting" CBA terms. 255 F. 3d at 693. "To the extent our prior cases held or implied that preemption was proper because of the mere possibility that the subject matter of the claim was a proper subject of the collective bargaining process, whether or not specifically discussed in the CBA, *we today hold such statements to be an incorrect articulation of § 301 preemption principles* [emphasis added]. A state law claim is not preempted under § 301 unless it necessarily requires the court to interpret an existing provision of a CBA that can reasonably be said to be relevant to the resolution of the dispute." *Cramer*, 255 F.3d at 693.

Second, *Cramer* and its progeny thwarted the ability of a defendant to trigger preemption with an affirmative defense. Although it did not explicitly address its prior holding in *Audette*, the Ninth Circuit held that in deciding whether a claim requires "interpretation" of a CBA, courts should focus on the contents of a plaintiff's complaint and not allow the kind of defensive triggering of preemption that *Audette* seemingly permitted. "As explained in *Cramer*, the

10

plaintiff's claim is the touchstone for the preemption analysis, and 'the need to interpret the CBA must inhere in the nature of the plaintiff's claim' to trigger preemption . . . . *[D]efensive reliance on the terms of the CBA*, mere consultation of the CBA's terms, or speculative reliance on the CBA *will not suffice to preempt a state law claim*." [emphasis added]. *Humble v. Boeing Co.*, 305 F.3d 1004, 1008 (2002); see also *Sprewell v. Golden State Warriors*, 266 F.3d 979, 991 (9th Cir. 2001) (defensive reliance on CBA terms is insufficient to trigger preemption).

Third, and finally, the cases are factually distinguishable. Unlike Ross, the plaintiff in *Audette* claimed that the defendant discriminated by failing to comply with a settlement agreement that had expressly incorporated terms of an underlying CBA, such that interpreting the CBA was necessary to resolve the claim. *Audette*, 195 F.3d at 1112. By contrast, interpreting a CBA is not required for the resolution of Ross's claims.

Since "the matter at hand can be resolved without interpreting the CBAs," *Burnside*, 491 F.3d at 1058-59, preemption is not warranted.[2]

## IV.  CONCLUSION

Defendants have not met their burden to justify removal. Ross's claims of gender-based discrimination arise entirely under Washington state law, not a collective bargaining agreement, and the claims do not "substantially depend" on an interpretation of a CBA. The claims thus

---

[2] Since the Court finds that none of the claims here invoke federal question jurisdiction, we need not address the issue briefed by the parties about whether purely state-law claims should also be swept in with federal law claims by operation of the "complete preemption" doctrine for LMRA § 301 cases. "Complete preemption" is an exception to the "well-pleaded complaint rule" that a plaintiff is "the master of the claim" and can choose to avoid federal jurisdiction by exclusive reliance on state law. "Once an area of state law has been completely pre-empted, any claim purportedly based on that preempted state law is considered, from its inception, a federal claim, and therefore arises under federal law." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987). This applies in LMRA § 301 cases "when resolution of a state-law claim is substantially dependent upon analysis of the terms of an agreement made between the parties in a labor contract." *Matson*, 840 F.3d 1132, citing *Lueck*, 471 U.S. at 220.

lack federal question jurisdiction and will be remanded to state court. Accordingly, Ross's motion to remand is GRANTED.

Dated this 10th day of January, 2018.

Barbara J. Rothstein

Barbara Jacobs Rothstein
U.S. District Court Judge